IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

JOHN MCGAHAN,

          Plaintiff,

vs.

MOHAMMAD F. GHASSEMI; and
GALACTIC EXPRESS, INC.,

          Defendants.

4:23-CV-3034

MEMORANDUM AND ORDER

    This matter is before the Court to finalize the judgment against the defaulted defendants, Mohammad F. Ghassemi and Galactic Express, Inc. The plaintiff, John McGahan, moved for default judgment. *See* filing 45. The Court granted that motion, but reserved entering judgment until after a hearing to determine the appropriate amount of damages. *See* Fed. R. Civ. P. 55(b); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001).

    The plaintiff seeks general and special damages resulting from the collision, including his medical bills, lost wages, and pain and suffering. At a hearing on October 2, 2024, the Court received evidence and testimony from the plaintiff. The defendants did not appear.

## I. BACKGROUND

    The plaintiff's lawsuit stems from a motor vehicle collision in January 2019. At that time, the plaintiff was a deputy sheriff for Lancaster County. He responded to a disabled vehicle on Interstate 80, near the Waverly exit. The plaintiff was parked on the shoulder of the median, on the eastbound side of the highway, waiting for the driver of the disabled vehicle. Another officer was

nearby, in his own police vehicle, around half a mile behind the plaintiff. His dashcam recorded the collision. *See* ex. 7.

Ghassemi was traveling westbound, driving a semitruck for his employer, Galactic Express. The plaintiff noticed the truck was travelling very fast. Under the road and weather conditions, the plaintiff believed that a safe driving speed for the truck would have been no more than 35 miles per hour. However, the truck appeared to be going at least 60 miles per hour.

The plaintiff watched the truck start to skid and head right toward him. The plaintiff thought the truck would slow down after hitting the snow in the median. It didn't. The plaintiff tried to move his vehicle out of the way, but because of the ice on the road, he could not move more than a few feet. The truck hit the plaintiff's vehicle on the driver's side rear door, pushing the plaintiff and his vehicle into oncoming eastbound traffic. The plaintiff's vehicle spun around violently, and Ghassemi's truck crossed the eastbound traffic lanes and hit another vehicle before coming to a stop.

At first, the plaintiff didn't experience any pain. He got out of his vehicle and started directing traffic. He said he was in a state of shock, and his adrenaline kept the pain at bay. Eventually, the plaintiff's neck started hurting, so he was taken via ambulance to a hospital in Lincoln. The doctors determined there were no fractures or other causes of concern, and the plaintiff received a muscle relaxant and was discharged the same day. In the following months, the plaintiff was in some pain, particularly in his neck and shoulder. He went to several sessions of physical therapy. *See* ex. 2.

A few months after the collision, the plaintiff was directing traffic near the collision site. He felt his heart rate go up, and he had an overwhelming feeling that he would get hit again. At his wife's suggestion, he went to a mental health provider in Lincoln, who diagnosed him with post-traumatic

stress disorder. *See* ex. 2. The plaintiff testified that, to this day, he feels nervous and panicked if there are poor road conditions on I-80.

Because of the plaintiff's significant anxiety and distress related to the traffic control portion of his job, after 30 years as a police officer, he resigned. He found a new job with the Nebraska Department of Insurance as a fraud investigator. The plaintiff had been a police officer since 1990, first working for the City of Lincoln and later moving to the county. He testified that he misses the culture of the sheriff's office. His new job also involved a considerable pay decrease.

## II. DAMAGES

The plaintiff has provided evidence of damages resulting from the collision for his medical expenses, his past and future lost wages, and his past and future pain and suffering. In a negligence action, the proper measure of damages is that which will place the plaintiff in the position in which he would have been had there been no negligence. *E.g.*, *World Radio Labs., Inc. v. Coopers & Lybrand*, 557 N.W.2d 1, 13 (1996). The plaintiff has the burden to prove the amount of damages "with as much certainty as the case permits." *Meisinger Earth Moving, Inc. v. State*, 324 N.W.2d 387, 390 (Neb. 1982). The appropriate value of pain and suffering evades precise measurement. *Carlson v. Okerstrom*, 675 N.W.2d 89, 111 (Neb. 2004).

The amount of damages is determined by considering the nature and extent of any injury; whether the injury is temporary or permanent; the value of the medical care reasonably needed and actually provided, and reasonably certain to be provided in the future; and the physical pain and mental suffering experienced or what is reasonably certain to be experienced. *E.g.*, *Lewison v. Renner*, 905 N.W.2d 540, 546-47 (Neb. 2018).

## 1. MEDICAL EXPENSES

| Medical Provider | Amount | Citation |
|---|---:|---|
| Bryan Health, 1/18/2019 | $5,140.72 | Ex. 1, p. 3 |
| Daring Minds, 8/31/2022 | $170.00 | Ex. 1, p. 4 |
| Jorgensen Physical Therapy, 2/4/2019 to 3/11/2019 | $1,130.00 | Ex. 1, p. 6 |
| Lincoln Radiology, 1/18/2019 | $410.00 | Ex. 1, p. 7 |
| Neurological and Spinal Surgery, 6/8/2022 | $364.00 | Ex. 1, p. 8 |
| Waverly Rescue Squad, 1/18/2019 | $950.00 | Ex. 1, p. 9 |
| Waverly Rescue Squad, 1/18/2019 | $342.00 | Ex. 1, p. 9 |
| ***Total Medical Expenses:*** | 53[1] | |

## 2. LOST WAGES

### *(a) Past Lost Wages*

| Actual Wages from Dept. of Ins. | | |
|---|---|---|
| *Year* | *Gross Pay* | *Citation* |
| 2020[2] | $4,656.60 | Ex. 5 at 3 |
| 2021 | $47,306.25 | Ex. 5 at 24 |
| 2022 | $53,565.58 | Ex. 5 at 44 |
| Jan. 2023-Nov. 2023 | $47,930.87 | Ex. 5 at 64 |
| Dec. 2023-July 2024 | $42,560.00 | Ex. 3; $30.40/hr, 40 hr/wk for 35 weeks |
| July 2024-Oct. 2, 2024 | $15,249.60[3] | Ex. 3; $31.77/hr, 40hr/wk for 12 weeks |
| ***Total Past Wages:*** | **$211,268.90** | |

---

[1] The plaintiff's calculations include line-items for medical bills that were not provided to the Court. *See* ex. 1. The Court's calculations reflect the medical bills actually provided.

[2] November 2020 (when he left Sheriff's Office) to December 2020.

[3] The calculations for December 2023 to October 2024 are estimated based on the plaintiff's hourly wage; no payroll or other records were provided for this period.

4

| Estimated Lost Wages from Sheriff's Department | | | | |
|---|---|---|---|---|
| *Citation* | *Year* | *Hourly Rate* | *Hours (Estimated)* | *Total Pay* |
| Ex. 3; Ex. 6 at 1 | Nov. 2020-Aug. 2021 (40 weeks) | $36.827 | 1,600 | $58,923.20 |
| Ex. 3 | Aug. 2021-Aug. 2022 (52 weeks) | $37.02 | 2,080 | $77,001.60 |
| Ex. 3 | Sept. 2022-Oct. 2, 2024 (109 weeks) | $43.81 | 4,360 | $191,011.60 |
| ***Total Past Lost Wages:*** | | **$326,936.40** | | |

Based on the evidence provided by the plaintiff, his lost wages, as of October 2, 2024, total $326,936.40. He has mitigated those losses by earning $211,268.90 while working for the Department of Insurance, so the total past lost wages is $326,936.40 less $211,268.90, which equals $115,667.50.

*(b) Future Lost Wages*

The plaintiff is expected to retire at age 60. *See* ex. 3. He is currently 57 years old, so he expects to work for 2 years and 11 months, or approximately 152 weeks. *See* ex. 3. Assuming the plaintiff continues to work 40 hours per week (as he has been, evidenced by the personnel records in exhibit 5), he will earn $193,161.60. He would have earned $266,364.80 with the Sheriff.[4] The difference between these numbers is $73,203.20.

*(c) Total Lost Wages*

Combining the past lost wages and the future lost wages calculations, the plaintiff has proved, to a reasonable degree of certainty, that the total lost wages appropriate as damages total $188,870.70.

---

[4] These numbers do not account for cost-of-living or other wage adjustments that the plaintiff might receive, or might have received, before he retires, because the plaintiff neither provided those calculations nor any mechanism by which to make those calculations.

3. TOTAL DAMAGES CALCULATION

The plaintiff proved, to a reasonable degree of certainty, that his medical expenses totaled $8,506.72. The plaintiff also proved, to a reasonable degree of certainty, that he would not have left his job with the Sheriff's Department but for the after-effects of the collision. He has proved $188,870.70 in past and future lost wages. He gave up years of camaraderie and career advancements because of prolonged stress and anxiety that were necessary to confront as part of his daily duties. More than the pay cut he accepted, the plaintiff is clearly still suffering from the collision. He no doubt experienced emotional distress in the moments leading up, during, and immediately following the collision.

For these reasons, the plaintiff has proved special damages in the amount of $197,377.42 (for medical expenses and lost wages), and $250,000 in general damages (for past and future pain and suffering), for a total award of $447,377.42.[5]

IT IS ORDERED that a separate judgment will be entered in favor of the plaintiff and against defendants Galactic Express and Mohammad F. Ghassemi in the amount of $447,377.42.

Dated this 16th day of October, 2024.

BY THE COURT:

John M. Gerrard
Senior United States District Judge

---

[5] The Court has not considered the settlement because no one has appeared to argue the effect of the settlement on the defaulted defendants' liability. *But see Ericksen v. Pearson,* 319 N.W.2d 76, 82 (1982); Restatement (Third) of Torts: Miscellaneous Provisions § 7 cmt. d(1) (2023); Restatement (Third) of Torts: Apportionment Liab. § 16 cmt. d (2000).